# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 17, 2012 Session

## LAUREN EPHGRAVE JARRELL v. EMMETT BLAKE JARRELL

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-005545-09      Gina C. Higgins, Judge**

---

**No. W2011-00578-COA-R3-CV - Filed March 28, 2012**

---

The parties' Parenting Plan required that major decisions regarding religious upbringing be made jointly, and if no consensus could be reached, that the dispute be submitted to a mediator. Mother had the parties' children baptized without Father's knowledge or consent, and Father filed a petition for civil and criminal contempt against Mother. The trial court found Mother in civil contempt, but it dismissed the criminal contempt petition, apparently for insufficient notice. We reverse the trial court's finding that Mother was in civil contempt, and its award of attorney fees to Father based upon the civil contempt finding. We also reverse the trial court's dismissal of Father's criminal contempt petition, and we remand for further criminal contempt proceedings.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Loys A. "Trey" Jordan, Joseph B. Baker, Memphis, Tennessee, for the appellant, Emmett Blake Jarrell

Mitchel D. Moskovitz, Mary Morgan Whitfield, Memphis, Tennessee, for the appellee, Lauren Ephgrave Jarrell

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Emmett Blake Jarrell ("Father") and Lauren Ephgrave Jarrell ("Mother") were married in March 2003, and a daughter and a son were born to the marriage in April 2005 and April 2007, respectively. Mother filed a complaint for divorce in November 2009. On June 30, 2010, the trial court entered a Final Decree of Divorce, which incorporated both a Marital Dissolution Agreement ("MDA") and a Permanent Parenting Plan ("Parenting Plan").

As relevant to this appeal, the Parenting Plan provided that "major decisions" regarding "religious upbringing" should be made jointly. However, "[i]n the event of a dispute" concerning such decisions, the parties agreed to submit the dispute "to a mutually agreed upon parenting mediator." The parties' MDA, which incorporated the Parenting Plan, further provided for the recovery of "reasonable attorney fees, costs, and expenses incurred . . . in securing performance."

During their marriage, the parties attended Christ United Methodist Church.[1] The parties disagreed as to the age at which their children should be baptized; Mother believed baptism should occur at an early age, but Husband did not. The disagreement led the parties to consult with their minister, who suggested that the parties "look to prayer for guidance on the issue[.]" According to Mother, however, no consensus regarding the appropriate baptismal age was reached, and the parties' "disagreement on the baptism issue" continued.

Following the parties' divorce, Mother began attending Independent Presbyterian Church, where, according to Mother, infant baptism is required. In October 2010, Mother had the parties' children baptized without Father's knowledge or consent. As a result, Father filed a "Petition for Scire Facias and Citation for both Civil and Criminal Contempt and to Amend/Modify Permanent Parenting Plan." Following a hearing on Father's petition, the trial court dismissed the criminal contempt charge against Mother apparently based upon its conclusion that the requisite notice was not provided, but it held Mother in civil contempt, finding that she had "willfully and 'with spite'" violated the Parenting Plan and that she "knowingly, willfully, and with knowledge that Father might disagree with her unilateral decision, concealed from Father and failed to notify Father of her intent to have the children baptized and failed to provide any notification of the Baptism Ceremony." The trial court ordered Mother to attend parenting classes and it awarded Father $10,000.00 in attorney fees incurred in bringing the petition.

---

[1]Mother contends that Father did not attend services regularly.

Both parties appealed to this Court, but an order was entered directing Father to obtain a final judgment.[2]  A second order[3] was subsequently entered by the trial court, and this appeal ensued.

## II.   ISSUES PRESENTED

Father presents the following issue, as summarized, for our review:

1.      Whether the trial court erred in dismissing the criminal contempt petition.

Additionally, Mother presents the following issues, as summarized:

2.      Whether the trial court erred in finding Mother in civil contempt; and

3.      Whether the trial court erred in awarding Father his attorney fees.

For the following reasons, we reverse the trial court's finding that Mother was in civil contempt, and its award of attorney fees to Father based upon the civil contempt finding. We also reverse the trial court's dismissal of Father's criminal contempt petition, and we remand for further criminal contempt proceedings.

## III.   DISCUSSION

### A. The Courts' Involvement in the Matter

As set out above, the trial court held Mother in civil contempt based upon its finding that she willfully violated the Parenting Plan by having the children baptized without Father's knowledge or consent.  On appeal, Mother claims that the trial court lacked authority to do so without a showing by Father that the baptisms substantially harmed the children.  Mother asserts that harm could not be shown because Father acknowledged that the Methodist Church "may" also believe in infant baptism, that the children did not fully comprehend the

---

[2]Specifically, the trial court's initial order did not fully adjudicate Father's request for attorney fees and it failed to adjudicate Father's requests to amend the Parenting Plan, to set child support, and to award discretionary costs.

[3]The subsequent order voluntarily dismissed, without prejudice, Father's requests for a modification of the Parenting Plan and an award of child support upon modification of such.

baptisms, that he had not contacted anyone in the Methodist Church to confirm his belief that the children could not be re-baptized, and that he believed infant baptism merely symbolized a parent's commitment to raise a child in the church. She also points out that Father admitted that the parties' children are reasonably well-adjusted, excellent children, and that both Mother and Father had raised them properly. Mother contends that in finding her in civil contempt, in awarding Father his attorney's fees, and in ordering Mother to attend parenting classes, the trial court "preferred Father's religious views about infant baptism over Mother's decision to influence the children with Mother's religious beliefs."

Mother is correct that courts "must maintain strict neutrality in cases involving religious disputes between divorced parents[,]" and they may not "prefer the religious views of one parent over another unless one parent's religious beliefs and practices threaten the health and well-being of the child." *Neely v. Neely*, 737 S.W.2d 539, 543 (Tenn. Ct. App. 1987) (citations omitted). However, simply put, this is not a "religious dispute." In this case, the trial court was asked only to determine whether Mother's conduct in failing to abide by the terms of the Parenting Plan warranted a finding of contempt; it was not called upon to resolve a religious dispute between the parties. Accordingly, we find that Mother's argument that the trial court lacked the authority to find her in contempt is without merit.

### B. Civil Contempt

Tennessee Code Annotated section 29-9-102(3) authorizes a court to exercise its contempt powers for, among other things, the "willful disobedience" of a court order. Contempt may be either criminal or civil in nature. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602, 613 (Tenn. Ct. App. 2006).

Criminal contempt is designed to "'preserve the power and vindicate the dignity and authority of the law'" and to "preserve the court 'as an organ of society.'" *Id.* (quoting *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996)). "Generally, sanctions for criminal contempt are designed to punish the contemnor and are unconditional in nature." *Id.* (citing *Black*, 938 S.W.2d at 398); *see also Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000) ("A party who is in criminal contempt cannot be freed by eventual compliance." (citing *Shiflet v. State*, 400 S.W.2d 542, 543 (Tenn. 1966). "'[Criminal contempt] is a punitive proceeding intended to impose a fixed punishment for past actions.'" *State ex rel. Farris v. Bryant*, No. E2008-02597-COA-R3, 2011 WL 676162, at *5 (Tenn. Ct. App. Feb. 24, 2011) (quoting *McLean v. McLean*, No. E2008-02796-COA-R3-CV, 2010 210752, at *3 (Tenn. Ct. App. May 28, 2010)).

"'Civil contempt occurs when a person refuses or fails to comply with a court order and a contempt action is brought to enforce *private rights*.'" **State v. Smith**, No. E2009-00202-CCA-R3-CD, 2010 WL 5276902, at *2 (Tenn. Crim. App. Dec. 17, 2010) *perm. app. denied* (Tenn. May 27, 2011) (emphasis added) (quoting *Black v. Blount* 938 S.W.2d 394, 398 (Tenn. 1996)); *see also Foster v. Foster* No. M2006–01277-COA-R3-CV, 2007 WL 4530813, at *3 (Tenn. Ct. App. Dec. 20, 2007) ("A court imposes civil contempt against one party for the benefit of the other party litigant."). "A civil contempt order is 'designed to compel the contemnor to comply with the court's order.'" *Id.* (citing *Black*, 938 S.W.2d at 398). Thus, a civil contempt order is "'available only when the individual has the ability to comply with the order at the time of the contempt hearing.'" *Id.* (quoting *Ahern*, 15 S.W.3d at 79); *see also Flowers*, 209 S.W.3d at 613 ("Unlike criminal contempt, the [civil] contemnor can purge the contempt by complying with the court's order.") (citing *Ahern*, 15 S.W.3d at 79). Imprisonment may be ordered when civil contempt is found, but "the one in contempt has the 'keys to the jail' and can purge the contempt by complying with the court's order." *Ahern*, 15 S.W.3d at 79 (citing Tenn. Code Ann. § 29-9-104; *Garrett v. Forest Lawn Memorial Gardens, Inc.*, 588 S.W.2d 309, 315 (Tenn. Ct. App. 1979)).

"Civil contempt claims based upon an alleged disobedience of a court order have four essential elements." **Konvalinka v. Chattanooga-Hamilton County Hosp. Authority**, 249 S.W.3d 346, 354 (Tenn. 2008).

> First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Id.* at 354-55 (internal footnotes omitted).

On appeal, Mother contends that the trial court's civil contempt finding is erroneous because her act of having the children baptized is a single occurrence which cannot be cured, and because, she claims, the Parenting Plan provision at issue is not clear, specific, and unambiguous. As stated above, the parties' Parenting Plan provides that "major decisions" regarding "religious upbringing" must be made jointly, and if no consensus can be reached, the dispute must be submitted to mediation. Mother contends that the provision is ambiguous because "[t]here were no specifications about actions that are required or forbidden relating to major religious decisions[,]" and because the provision "gave no direction or insight as to what each parent was required to consult with the other parent about, as it related to religion."

"Vague or ambiguous orders that are susceptible to more than one reasonable interpretation cannot support a finding of civil contempt." *Id.* at 356 (citing *City of Gary v. Major*, 822 N.E.2d 165, 170 (Ind. 2005); *Judge Rotenberg Educ. Ctr., Inc. v. Comm'r of Dep't of Mental Retardation*, 424 Mass. 430, 677 N.E.2d 127, 137 (1997); *Ex parte Slavin*, 412 S.W.2d 43, 45 (Tex. 1967)). A court order need not be "'full of superfluous terms and specifications adequate to counter any flight of fancy a contemnor may imagine in order to declare it vague,'" *id.* (quoting *Ex parte McManus*, 589 S.W.2d 790, 793 (Tex. Civ. App.–Dallas 1979), but it must "leave no reasonable basis for doubt regarding [its] meaning." *Id.* We review an order's alleged ambiguity *de novo*, resolving ambiguities in favor of the party facing the contempt charge. *Id.* (citations omitted).

We find Mother's argument related to ambiguity disingenuous, at best. In her deposition, Mother acknowledged that the parties "have always had a disagreement on the baptism issue" and she conceded that baptism is a "major religious decision[.]" Under the circumstances of this case, we find the Parenting Plan provision outlining the procedure for making "major decisions" regarding "religious upbringing" was sufficiently clear, specific and unambiguous to alert Mother that her unilateral action was proscribed.

However, we must agree with Mother's assertion that a civil contempt finding was inappropriate in this case because the trial court sought to *punish* Mother for her past violation of the Parenting Plan, rather than to *compel* her compliance with such. Because civil contempt is "'available only when the individual has the ability to comply with the order at the time of the contempt hearing[,]'" *Smith*, 2010 WL 5276902, at *2 (citing *Black*, 938 S.W.2d at 398), the trial court's civil contempt finding was error, and must be reversed. Consequently, the award of attorney fees to Father stemming from the civil contempt finding is likewise reversed.

### B. Dismissal of Criminal Contempt Petition

In its order, the trial court dismissed Father's criminal contempt petition without explanation. However, orally, the trial court suggested that the contempt *fiat* lacked sufficient notice of the specific Parenting Plan provision allegedly violated. Father contends, on appeal, that this dismissal was error.

When contemptuous acts are committed outside of the presence of the court, criminal contempt proceedings must comply with Tennessee Rule of Criminal Procedure 42(b). A criminal contempt defendant must be given notice that he is charged with *criminal* contempt, notice of the time and place of the contempt hearing, notice of the "essential facts" constituting the criminal contempt charge, and he must be allowed a reasonable time to

prepare a defense. **Tenn. R. Crim. P. 42(b)**; *Long v. McAllister-Long*, 221 S.W.3d 1, 13 (Tenn. Ct. App. 2006) (citing *Jones*, 1997 WL 80029, at \*2-3).

> Essential facts are those which, at a minimum, (1) allow the accused to glean that he or she is being charged with a crime, rather than being sued by an individual, (2) enable the accused to understand that the object of the charge is punishment–not merely to secure compliance with a previously existing order, and (3) sufficiently aid the accused to determine the nature of the accusation, which encompasses the requirement that the underlying court order allegedly violated by the accused is itself clear and unambiguous.

*Id.* (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 446, 31 S.Ct. 492, 500; *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 471 (Tenn. 2003); *McPherson v. McPherson*, No. M2003-02677-COA-R3-CV, 2005 WL 3479630, at \*5 (Tenn. Ct. App. Dec. 19, 2005); *Jones*, 1997 WL 80029, at \*3). In criminal contempt proceedings, the presumption of innocence applies, and willful failure to comply with a court order must be proved beyond a reasonable doubt. *Id.* (citing *Black*, 938 S.W.2d at 398; *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993)).

To determine whether the requisite notice was given to Mother, we turn to Father's petition styled "Petition for Scire Facias and Citation for Both Civil and Criminal Contempt and to Amend/Modify Permanent Parenting Plan" and accompanying fiat filed in this case. The petition states, in relevant part:

> **COMES NOW,** [Father] . . . and brings this Petition for Scire Facias and requesting this Court issue citations for both civil and criminal contempt against [Mother.] In support of this Petition, Father would respectfully assert to this Honorable Court the following facts and allegations:

> The parties were divorced by this Honorable Court with the divorce decree entered on or about June 30, 2010.

> Contemporaneously with the entry of the Final Decree of Divorce, this Court also entered a Permanent Parenting Plan on June 30, 2010.

> . . . .

> Prior to the divorce of the parties, the family attended church at Christ United Methodist Church.

Incident to their attendance at Christ United Methodist Church, Mother and Father engaged in discussions regarding certain religious issues that were important to the parties including but not limited to the manner and age in which the parties' children would be baptized.

In discussing issues as to when the parties' children would be baptized, there was initially a disagreement between Mother and Father as to the appropriate age for the children to be baptized, with Mother believing baptism should occur earlier in the children's lives and Father believing that the parties should wait until the children were older and better able to understand the religious significance of baptism.

Prior the parties divorce, they met with the Church's minister to discuss the baptism issue and whether or not the minister had any suggestions as to the appropriate age for the children to be baptized.

. . . .

On October 10, 2010, Mother engaged in conduct which has irreparably changed the circumstances of the relationship between Mother and Father as it relates to the parties' minor children with the action of Mother more specifically stated below.

Pursuant to the Permanent Parenting Plan entered by this Honorable Court, which is an Order of this Court, the Plan specifically provides that for "major decisions regarding each child" the parties shall make joint decisions with regard to religious upbringing.

If a joint decision is not reached between Mother and Father, pursuant to the Permanent Parenting Plan, the parties agreed to submit the dispute to a mutually agreed upon parenting mediator.

Following discussions between Mother and Father during their marriage, Father did not have any further communication with Mother relative to baptism of the children and believed that the parties had reached a consensus that they would wait until the children were older before having the children baptized into the Church.

Following the divorce of the parties, Father continued to attend Christ United Methodist Church.

Following the divorce, Mother began to attend Independent Presbyterian Church.

On or about the afternoon of Sunday, October 10, 2010, Father was contacted by an individual who had attended the church service that prior morning at Independent Presbyterian Church.

Father learned, for the first time, that Mother, without providing him any notification or any consultation, had had the children baptized into the Church at Independent Presbyterian Church.

The baptism of the parties' children was referenced in the Church bulletin noted as "the Sacrament of Baptism" referencing a baptismal time of 11:00 a.m., October 10, 2010.

At no time prior to this baptism ceremony nor at any time up to and through Father's execution of this Petition did Mother ever consult with Father regarding this baptism or provide Father with any notification that this baptism was to occur or had occurred.

The actions of Mother in willfully and maliciously excluding Father from such an important event are inexplicable and should be subject to the most severe and harsh sanctions that this Court can levy.

Father asserts that the baptismal event is a singular occurrence in the lives of his children and cannot again be experienced in either his life or the lives of his children.

Upon information and belief, Mother had planned this baptism of the children with sufficient notification as to have members of her family attend the baptism.

The baptism of the children was so important to Father that he, with Mother, had consulted with a minister of the Church previously attended by the parties during the time the parties were married.

Mother knew the importance of the baptismal event to the Father and even with this knowledge, maliciously and surreptitiously scheduled the baptism, proceeded with the baptism, and even as of the date of the execution of this Petition by Father, has concealed the occurrence of this event from

-9-

Father

. . . .

Had Father known that Mother was intending to have the children baptized, again at an age he believed was too young for the children to fully understand the importance and religious significance of the event, at most, any disagreement on such an important issue would have triggered that provision of the Permanent Parenting Plan which required that the parties submit any dispute to a mutually agreed upon parenting mediator.

Even if the parenting mediator had determined that it was appropriate to proceed with the baptism, Father would have at least had the opportunity to participate in the event.

. . . .

Mother simply chose to violate this Court's Order, blatantly proceeding with a baptism rather than follow the Court's specific and unequivocal Order requiring that the parties submit to mediation if a consensus was not reached on such a significant religious event.

Mother's violation of this Court's Order was knowing, malicious, planned well in advance of the event, and is irreversible.

Mother's flagrant disregard and willful violation of this Court's Order on such a significant event, in and of itself, provides an unequivocal basis for this Honorable Court to not only sanction and hold Mother in both civil and criminal contempt, but also provides an unequivocal basis to modify the Permanent Parenting Plan so as to designate Father as primary residential parent, restructure the parenting schedule, and immediately change all previously joint decision making to the sole decision making of Father with regard to educational decisions, non-emergency health care, religious upbringing, and extracurricular activities.

The surreptitious nature in which Mother perpetrated, apparently without remorse, such a malicious act upon Father, and upon the children by excluding Father from such an important event, demonstrates that not only does she have contempt for this Court but also contempt for the very welfare of the children and therefore should no longer be entrusted to make decision[s]

-10-

on behalf of the children or be designated as primary residential parent.

. . . .

**WHEREFORE PREMISES CONSIDERED,** Father respectfully requests the following relief from this Honorable Court:

. . . .

That upon service of process, [Mother] be required to show this Honorable Court why she should not be held in both Civil and Criminal Contempt for her willful violation of this Court's order.

That this Honorable Court find [Mother] in Criminal Contempt of this Court's Order and punish her in accordance with the Laws of the State of Tennessee, including b[ut] not limited to confinement in jail, for her willful violation of the Permanent Parenting Plan that is an Order of this Court.

Additionally, the Fiat provides:

TO THE CLERK OF THE COURT:

Set the foregoing Petition for Scire Facias and Citation for Civil and Criminal Contempt and Petition Seeking Modification of the Permanent Parenting Plan, for a hearing on the 7th day of Jan[uary], 2011, at 10:00 a.m., in Division IV in the Circuit Court of Shelby County, Tennessee, and have notice of same served on the Respondent [Mother], to appear and defend the charge of Criminal Contempt of Court for willfully failing to comply with the Permanent Parenting Plan that is an Order of this Court, and to show cause, if any she has, why she should not be held in Criminal and/or Civil Contempt of the Orders of this Court.

Have further notice given to the Respondent, [Mother] that [Father] has alleged that [Mother] is in Criminal Contempt of the prior Orders of this Court, pursuant to the Permanent Parenting Plan entered by this Court. [Father] intends to meet his burden of proof by showing beyond a reasonable doubt that [Mother] is in Criminal Contempt of Court by willfully failing to comply with and abide by the Permanent Parenting Plan. When charged with Criminal Contempt, the Respondent is not required to give evidence against herself and

is presumed innocent until proven guilty beyond a reasonable doubt. Upon conviction of Criminal Contempt you may be imprisoned. Upon conviction of Criminal Contempt you may also be fined.

. . . .

## WARNING

**THIS PETITION PLACES YOU IN JEOPARDY OF BEING FOUND IN CRIMINAL CONTEMPT OF THIS COURT'S ORDER. EACH INCIDENT OF CRIMINAL CONTEMPT CAN RESULT IN YOUR INCARCERATION IN JAIL ON CONTEMPT CHARGES. EACH INCIDENT OF CRIMINAL CONTEMPT CAN RESULT IN FINES. YOU HAVE THE RIGHTS OF A CRIMINALLY ACCUSED PERSON. YOU HAVE THE RIGHT TO COUNSEL. YOU ARE PRESUMED INNOCENT UNTIL PROVEN GUILTY BEYOND A REASONABLE DOUBT. YOU ARE NOT REQUIRED TO GIVE EVIDENCE AGAINST YOURSELF**.

Clearly, both Father's petition and the accompanying fiat alerted Mother that she was charged with criminal contempt for which Father sought punishment, including possible incarceration. The petition, in great detail, set out the essential facts of the charge, specifically claiming that Mother's actions in having the children baptized without Father's knowledge or consent violated the provision of the Parenting Plan requiring that major religious decisions be made jointly or referred to a mediator. The fiat identified the time and place of the contempt hearing and both the petition and fiat were served upon Mother's counsel more than two months prior to the hearing. We find no support for the trial court's apparent conclusion, and Mother's argument on appeal, that the fiat, itself, was required to state the specific provision of the Parenting Plan allegedly violated giving rise to the criminal contempt charge. Ample notice was given in this case to comply with the requirements of Tennessee Rule of Criminal Procedure 42(b). Accordingly, we find that the trial court erred in dismissing Father's petition for criminal contempt for lack of notice, and we remand for further criminal contempt proceedings.

## IV. CONCLUSION

For the aforementioned reasons, we reverse the trial court's finding that Mother was in civil contempt, and its award of attorney fees to Father based upon the civil contempt finding. We also reverse the trial court's dismissal of Father's criminal contempt petition, and we remand for further criminal contempt proceedings. Costs of this appeal are taxed equally to Appellee, Lauren Ephgrave Jarrell, and Appellant, Emmett Blake Jarrell, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.